

AUSA Peter S. Salib (312) 554-9163

FILED
6/22/2021
CC

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA

v.

MAX SCHAEFER

CASE NUMBER:

**21 CR 385**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about November 30, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a) | did knowingly and intentionally distribute a controlled substance, namely 50 grams or more of methamphetamine (actual), a Schedule II Controlled Substance. |

This criminal complaint is based upon these facts:

 X   Continued on the attached sheet.

KEVIN HEGI
Postal Inspector, U.S. Postal Inspection Service

Sworn to before me and signed in my presence.

Date: June 22, 2021

*Judge's signature*

City and state: Chicago, Illinois

JEFFREY CUMMINGS, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

Ss

## AFFIDAVIT

I, Kevin Hegi, being duly sworn, state as follows:

### Background of Affiant

1.     I am a Postal Inspector with the U.S. Postal Inspection Service ("USPIS") and have been so employed since approximately February 2017.  Since joining the USPIS as a Postal Inspector, I have been assigned to the USPIS Contraband Interdiction and Investigations team. Since approximately October 2018, I have also been assigned as a Task Force Officer to a Drug Enforcement Administration ("DEA") and Federal Bureau of Investigation ("FBI") drug trafficking task force. Prior to becoming employed with the USPIS, I was a Staff Operations Specialist with the FBI for approximately seven years.

2.     This affidavit is submitted in support of a criminal complaint alleging that Max Schaefer has violated Title 21, United States Code, Section 841(a).  Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging SCHAEFER with distribution of controlled substances, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3.     This affidavit is based on my personal knowledge, information provided to me by other law enforcement personnel and from persons with knowledge regarding relevant facts, and information obtained from United States Postal Service ("USPS") records, phone records, and the execution of federal search warrants.

## FACTS SUPPORTING PROBABLE CAUSE

### Background of the Investigation

4.     Between December 2020 and April 2021, USPIS intercepted four parcels mailed from Los Angeles-area post offices to Chicago-area addresses, each of which were searched pursuant to federal search warrants and found to contain over 50 grams of methamphetamine. As discussed further below, the handwriting on each of the parcels appeared to be substantially the same and the methamphetamine contained within each parcel was concealed within binders. USPS and T-Mobile records show that the cellular telephone associated with the phone number (312) 772-1867 ("Subject Phone 1"), believed to be used by MAX SCHAEFER, was used to track two of the parcels sent from Los Angeles-area post offices to Chicago-area addresses on or about November 30, 2020, and December 3, 2020, respectively.[1]  Additionally,

---

[1] As explained in further detail below, I believe that Subject Phone 1 is used by SCHAEFER because: (1) Individual A, who has met SCHAEFER in person and has known SCHAEFER for a period of time, provided the phone number associated with Subject Phone 1 as SCHAEFER's phone number; (2) consistent with information provided by Individual A, toll records show numerous contacts between Individual A and Subject Phone 1 during the period when Individual A claimed to be in contact with SCHAEFER; (3) toll records for Subject Phone 1 showed numerous contacts with two phones used by Individual B, who admitted to receiving shipments of methamphetamine from SCHAEFER; (4) the number for Subject Phone 1 was saved in one of Individual B's phones under the name "Max"; (5) text messages between Individual B and Subject Phone 1 found in one of Individual B's phones refer to the user of Subject Phone 1 as "Max" and appear to discuss the shipment of methamphetamine; (6) law enforcement observed the physical location for Subject Phone 1 to correspond with surveillance of SCHAEFER in March 2021; and (7) law enforcement attempted to call Subject

USPS records and bank records from Financial Institution 1 show that a debit card linked to SCHAEFER's bank account at Financial Institution 1 was used to pay for the shipment of the other two parcels, which were both sent from a Los Angeles-area post office to Chicago-are addresses on or about April 26, 2021.

5. Based on historical cell site data, toll records, phone location information for Subject Phone 1 obtained through subpoena and/or court order, text messages sent from Subject Phone 1 to the intended recipient of one of the four parcels, SCHAEFER's bank records, and surveillance video of the Los Angeles-area post offices from which two of the parcels were mailed, I believe SCHAEFER is the individual who mailed each of the four parcels from Los Angeles to Chicago for further distribution in Chicago.

6. This affidavit sets forth facts intended to establish probable cause to believe SCHAEFER violated Title 21, United States Code, Section 841(a) on or about November 30, 2020, by knowingly and intentionally distributing the first of the four parcels from the Los Angeles area to the Chicago area by placing the package in the mail, which package contained over 50 grams of methamphetamine.

## A. November 30, 2020 Shipment of Parcel 1 Containing Approximately 771 Grams of Methamphetamine

7. On or about December 1, 2020, law enforcement identified and intercepted a USPS Priority Mail Express parcel (**Parcel 1**) mailed on or about

---

Phone 1 and listened to a voicemail greeting indicating the phone was associated to SCHAEFER

November 30, 2020, from Los Angeles, California, and addressed to "[Individual I]" at 445 West Barry Avenue, Apartment 223, Chicago, Illinois.[2]

8.     On or about December 2, 2020, law enforcement obtained a federal search warrant in the Northern District of Illinois (20 M 625) for **Parcel 1**, which was subsequently searched and found to contain two inner USPS Priority Mail Tyvek mailing envelopes that further concealed a green-colored three ring binder with two manila-colored bubble mailers inside. One of the bubble mailers contained two bundles that contained a white crystalline-like substance within clear vacuum-sealed plastic bags. The second bubble mailer contained three smaller bundles which also contained a white crystalline-like substance within clear vacuum-sealed bags.[3] According to a chemical analysis report prepared by the DEA North Central laboratory, the white crystalline-like substance found within the five vacuum-sealed plastic bags weighed approximately 771 grams and consisted of methamphetamine with a substance purity of approximately 100%.

9.     According to a review of USPS records, there were several inquiries on the delivery status of **Parcel 1** in the USPS online tracking system from Internet

---

[2] As discussed further below, the handwriting on the **Parcel 1** label appears similar to the handwriting on the labels for the other three above-referenced parcels containing methamphetamine believed to have been mailed from California by SCHAEFER (identified below as the Wilson Parcel, the Roscoe Parcel, and the Canal Parcel).

[3] As discussed further below, the methamphetamine contained in the other three above-referenced parcels believed to have been from California by SCHAEFER (identified below as the Wilson Parcel, the Roscoe Parcel, and the Canal Parcel) was also placed within vacuum-sealed plastic bags and concealed within ring binders.

Protocol ("IP")[4] addresses, including an IP address associated with the service provider T-Mobile that tracked the status of **Parcel 1** on or about December 4, 2020. According to information received from T-Mobile, the IP address was associated with Subject Phone 1. On or about December 2, 2020, an additional IP address associated with an RCN account registered to an address in Chicago, Illinois also tracked the status of **Parcel 1**. Historical call detail records and pen register activity for Subject Phone 1 show approximately 1,275 contacts from on or about November 15, 2020, to on or about June 14, 2021, between Subject Phone 1 and the phone number associated with this Chicago-based RCN account that was also tracking **Parcel 1**.

10.     Law enforcement later obtained and reviewed video surveillance footage from the Los Angeles area USPS Post Office from which **Parcel 1** was mailed on or about November 30, 2020. The video footage showed a male individual, substantially similar in physical appearance to SCHAEFER, as depicted in SCHAEFER's Illinois Secretary of State identification photograph, enter the post office with a package consistent in size and appearance to **Parcel 1**, and mail the parcel at approximately 3:20 p.m. Pacific Time, the same time USPS records indicated **Parcel 1** was mailed.[5] The individual appeared to hold and look at a black-colored cellular phone, suspected to be Subject Phone 1, while waiting in line for the retail counter. Toll records for Subject Phone 1 show that Subject Phone 1 was used for voice calls at 3:07 p.m. and

---

[4] An IP address is a number assigned by an Internet Service Provider to devices accessing the internet.

[5] The Individual believed by law enforcement to be SCHAEFER was wearing dark-colored sunglasses and a facial mask while in the post office.

3:35 p.m. Pacific Time, immediately before and after USPS records show **Parcel 1** was mailed.

11. On March 11, 2021, Acting Chief Judge Virginia M. Kendall issued a warrant and order (21 GJ 158) that: authorized the installation and the use, for a period of 60 days, of a pen register and trap and trace device on Subject Phone 1; required service providers to provide, for a period of 30 days, all information, facilities, and technical needed to ascertain the physical location of Subject Phone 1; required service providers to provide historical call detail records for Subject Phone 1 and records reflecting the cell tower and antenna face ("cell site") used at the start and end of each call, text message, and data transaction for Subject Phone 1, for the period from October 15, 2020 through March 8, 2021.

12. According to a preliminary review of historical call detail records with cell site information obtained for Subject Phone 1, Subject Phone 1 used cell towers in Los Angeles, California on or about November 30, 2020, the same day the **Parcel 1** was mailed. More specifically, the cell site location utilized by Subject Phone 1 for the voice call which occurred at approximately 3:07 p.m. Pacific Time immediately before **Parcel 1** was mailed was less than approximately half a mile from the post office where **Parcel 1** was mailed.

13. Toll records for Subject Phone 1 also show that from on or about September 23, 2020, through on or about December 2, 2020, Subject Phone 1 exchanged approximately 471 contacts with two cell phones used by an individual

(Individual B), who, as discussed further below, has admitted to law enforcement to being the intended recipient of **Parcel 1**.[6]

14.     On December 2, 2020, Individual B provided written consent for law enforcement to search one of his cellular phones ("Individual B Phone 2").   According

---

[6] As set forth further below, Individual B was arrested on or about November 23, 2020 in or around Hobart, Indiana by officers of the Hobart Police Department, who recovered from a vehicle driven by Individual B a handgun and a clear rock-like substance that field-tested positive for methamphetamine.  Individual B previously served a two-year sentence in connection with a federal felony conviction in the Northern District of Illinois for possession with intent to distribute a controlled substance.  In response to a motion for early termination of Individual B's two-year term of supervised release (filed with the agreement of the U.S. Attorney's Office for the Northern District of Illinois), Individual B's supervised release was ordered terminated on or about March 18, 2020.   Following Individual B's arrest on November 23, 2020, Individual B met with members of FBI Gang Response Investigative Team ("GRIT") in Hobart, Indiana, consented to the search of one of his cell phones (Individual B Phone 1) and agreed to cooperate with the understanding that his cooperation would be considered in any charging decisions or sentencing recommendations.  Individual B was then released without charges.  Individual B met again with members of GRIT on November 30, 2020, and he provided additional information regarding shipments of methamphetamine.  Individual B, however, failed to disclose that in the days since his November 23, 2020 arrest, Individual B arranged for an additional shipment of methamphetamine from SCHAEFER (**Parcel 1**).  On December 2, 2020, after the search of **Parcel 1** earlier that day, members of GRIT asked Individual B about **Parcel 1**.  Individual B then admitted that he had arranged for SCHAEFER to ship him **Parcel 1** and consented to the search of his second phone (Individual B Phone 2), which contained text messages with Subject Phone 1 discussing the shipment of **Parcel 1**.  After this disclosure, GRIT ceased cooperation with Individual B.  On or about December 9, 2020, the U.S. Attorney's Office for the Northern District of Indiana then charged Individual B by indictment with one count of knowing possession with intent to distribute methamphetamine in violation of Title 18, United States Code, Section 841(a)(1) and one count of possession of a firearm by a convicted felon, in violation of Title 18, United States Code, Section 922(g).  Both charges were based on the firearm and methamphetamine recovered during the November 23, 2020 arrest by Hobart Police Department.  To date, Individual B has not been charged in connection with **Parcel 1**.  No promises have been made to Individual B with respect to any charges in connection with **Parcel 1**.  As set forth further below, Individual B's statements to law enforcement referencing SCHAEFER are corroborated by, among other things, text messages with Subject Phone 1 found on Individual B Phone 2, toll records showing calls and text messages between Subject Phone 1 and both Individual B Phone 1 and Individual B Phone 2, surveillance video that appears to show SCHAEFER mailing **Parcel 1**, Individual A's statements to law enforcement regarding SCHAEFER's] use of Subject Phone 1 and methamphetamine distribution activities, and USPS records showing Subject Phone 1 was used to track both **Parcel 1** and the Wilson Parcel.

to information recovered from Individual B Phone 2, Subject Phone 1 was listed under the contact name of "Max" and Individual B communicated with Subject Phone 1 regarding what appears to be **Parcel 1**. More specifically, on or about November 26, 2020, Individual B sent a text message to Subject Phone 1 which read: "hey brother just checking to make sure you made it home OK out there in California give me a call let me know you got home OK happy Thanksgiving."[7]  On the same date, Individual B sent Subject Phone 1 an additional text message stating "[Individual I], 445 w. Barry apt 223, Chicago, IL 60657."  Based on my training and experience, as well as the fact that **Parcel 1** was in fact sent to "[Individual I]" at "445 W. Barry, Apt. 223, Chicago, IL 60657" approximately four days after the above-quoted text message, I believe Individual B's text message to Subject Phone 1 was intended to provide SCHAEFER with shipping instructions for **Parcel 1**.

15.    From on or about November 26, 2020, through November 28, 2020, according to the consent search of Individual B's phone, Individual B sent the following text messages to Subject Phone 1: "Yo are you ok?? Did u make it out there?"; "Max please call me when you are up, I need to know what's up and that there is NO chance of my money being lost"; "Max I'm really stressing out over this, i need to know what is going on. I need to talk to you before you leave call me"; and

---

[7] To the extent that text message conversations are summarized in this Affidavit, those summaries do not include references to all of the topics covered during the course of the recovered text message conversations. At various points in the Affidavit, I included in brackets my interpretation of words and phrases used in the text message conversations. My interpretations are based on the contents and context of the text message conversations, my knowledge of the investigation as a whole, my experience and training, and the experience and training of other law enforcement officers in this investigation.

"Max I really need you to call me, I'm not mad I just need to hear from you , I have to give these guys some news about what's going on ya know , please call me." On or about November 28, 2020, the user of Subject Phone 1, believed to be SCHAEFER, replied: "[first name of Individual B] please don't stress out. I'm boarding my flight and will be in LA at 4:30. The packages will be out in the mail on Monday [November 30, 2020, the shipping date for **Parcel 1**] and you should receive them by 1pm on Tuesday [expected delivery date of **Parcel 1** and the date law enforcement intercepted the parcel]." Based on my training and experience, I believe SCHAEFER, utilizing Subject Phone 1, indicated to Individual B he was travelling to the Los Angeles area from Chicago and provided the date for which he was planning to mail **Parcel 1**, as well as the expected delivery date for the parcel.

16.     According to a preliminary review of historical call detail records with cell site information later obtained for Subject Phone 1, the phone utilized cell tower locations in the area of O'Hare International Airport on or about November 29, 2020. The next cell site information for Subject Phone 1 later on the same day showed the phone in the Los Angeles, California area.

17.     Following his arrest by Hobart Police Department on or about November 23, 2020, Individual B provided written consent for law enforcement to search another phone (Individual B Phone 1). Individual B Phone 1 contained, among other things, a screenshot containing a USPS parcel tracking number associated with a parcel mailed from Los Angeles, California on or about October 17, 2020 to 445 West Barry Avenue, Apartment 223, Chicago, Illinois, the same recipient address listed on

**Parcel 1**.  During a subsequent interview on or about November 30, 2020, Individual B indicated that MAX SCHAEFER, whom Individual B identified by name and by reviewing an Illinois Secretary of State identification photo of SCHAEFER, previously mailed several parcels containing one or more pounds of methamphetamine to Individual B in exchange for upfront payments from Individual B.[8]  Individual B indicated SCHAEFER resided in the Chicago area, but traveled to California to obtain methamphetamine and mail it to Individual B and other individuals.  Individual B did not disclose to agents that he had continued to arrange for SCHAEFER to ship methamphetamine from California to Individual B after his arrest on November 23, 2020.

18.  Soon after the search of **Parcel 1** on December 2, 2020, law enforcement confronted Individual B regarding **Parcel 1**.  Individual B stated that **Parcel 1** was sent from California by SCHAEFER and ultimately was intended for Individual B. Individual B further stated that **Parcel 1** contained methamphetamine and that he/she paid SCHAEFER $10,000 for the methamphetamine contents.

**B.     Shipment of Additional Parcels Containing Methamphetamine**

19.  In addition to **Parcel 1**, law enforcement identified and intercepted three additional parcels mailed from post offices in the Los Angeles area to addresses in the Chicago area on December 3, 2020 and April 26, 2021.  The handwriting on the labels for all three parcels was similar to the handwriting on the label for **Parcel 1**

---

[8] As noted above, at the time, Individual B was cooperating in the hope that his/her cooperation would be considered in connection with any charging decisions or sentencing recommendations.

and, like **Parcel 1**, all three parcels were found to contain methamphetamine in vacuum-sealed plastic bags concealed within binders.  As discussed below, historical cell site data, toll records, and phone location information for Subject Phone 1 indicate SCHAEFER was the individual who mailed these three additional parcels.

### 1. December 3, 2020 Shipment of Parcel Containing Approximately 437 Grams of Methamphetamine

20.    On or about December 4, 2020, law enforcement identified and intercepted a USPS Priority Mail Express parcel mailed on or about December 3, 2020 from Palm Springs, California and addressed to "Jay Mendez," at 1325 West Wilson, Apartment 809, Chicago, Illinois 60640 ("Wilson Parcel").  According to USPS records, the Wilson Parcel listed a sender name, Individual A, and a sender address in the Los Angeles area that, according to a review of a law enforcement database, also was associated with both Individual A and MAX SCHAEFER.[9]  The handwriting for the Wilson Parcel label appeared to be substantially similar to the handwriting for **Parcel 1**.

21.    On or about December 7, 2020, law enforcement obtained a federal search warrant in the Northern District of Illinois (20 M 631) for the Wilson Parcel, which was subsequently searched and found to contain an inner USPS Priority Mail

---

[9] The sender last name listed on the Wilson Parcel was spelled slightly different than the actual last name of Individual A. Additionally, while the sender building address listed for the Wilson Parcel is the correct building address associated with both Individual A and SCHAEFER according to the law enforcement database, the apartment number listed on the Wilson Parcel differs from the apartment number listed for Individual A and SCHAEFER on the law enforcement database. In my training and experience, drug traffickers will often utilize fictitious sender names and/or fictitious return addressees to avoid association with a drug laden parcel.

Tyvek mailing envelope, similar to the packaging used for **Parcel 1**, that further contained a blue-colored three-ring binder with a flat-rate USPS Priority Mail Express envelope inside. The envelope further contained two manila-colored bubble mailers. Each of the bubble mailers were found to contain a clear vacuum-sealed plastic bag bundle containing a white crystalline-like substance. According to a chemical analysis report prepared by the DEA North Central laboratory, the white crystalline-like substance found within the bags weighed approximately 437 grams and consisted of methamphetamine with a substance purity of approximately 99%.

22. On or about December 16, 2020, acting in an undercover capacity as a USPS customer service representative, I telephonically contacted the phone number listed on the Wilson Parcel as the phone number for Individual A, the listed sender of the Wilson Parcel, in regards to the delivery status for the parcel. The person who picked up the call, which was audio recorded, identified himself/herself as Individual A, acknowledged that the phone number listed on the Wilson Parcel was his/her phone number, and stated s/he was not familiar with the listed recipient address or name for the Wilson Parcel.[10] Individual A further stated, "I think I know what is going on," and indicated that approximately six-to-eight months earlier, s/he had met through mutual acquaintances an individual named MAX SCHAEFER, who used the phone number (312) 772-1867 (Subject Phone 1). Individual A indicated that s/he

---

[10] According to a review of a law enforcement database, Individual A has no criminal history other than a deferred entry of judgment in Los Angeles drug court arising from an arrest for possession of controlled substances in July 2012. No representations have been made to Individual A regarding his/her status in the investigation or the impact of his/her cooperation on any future charging decisions or sentencing recommendations.

learned that SCHAEFER, despite never having lived with Individual A, applied to open a bank account using Individual A's address, which prompted Individual A to stop communicating with SCHAEFER.[11]  Individual A expressed concern that SCHAEFER may now be listing Individual A's address as a return address on shipments.  Individual A indicated s/he believed SCHAEFER may be shipping "illegal" items and expressed interest in speaking further with law enforcement.

23.    Later the same date, I again contacted Individual A by telephone and identified myself as a Postal Inspector.  On the call, which was not audio recorded, Individual A agreed to provide additional information and stated that after meeting SCHAEFER through mutual acquaintances, s/he saw SCHAEFER in Los Angeles approximately seven-to-eight times.[12]  According to Individual A, s/he was previously present on a prior occasion when SCHAEFER told a group of individuals he mails packages that contain crystal methamphetamine from the Los Angeles area to various addresses in the Chicago area. SCHAEFER also previously told Individual A that he had been in possession of methamphetamine and once utilized a rental car that had methamphetamine hidden in a spare tire.  According to Individual A, approximately two-to-three months earlier, SCHAEFER informed Individual A that

---

[11] Toll records for Subject Phone 1 show regular contacts between the phone number I used to contact Individual A (which is subscribed to Individual A) and Subject Phone 1 from approximately October 1, 2020 through October 30, 2020, approximately twelve text messages exchanged on November 7, 2020, and then no further contact through on or about June 14, 2021, the end of the phone activity for Subject Phone 1 from toll records and pen register information currently available at the time the affidavit was prepared.

[12] No representations have been made to Individual A regarding his/her status in this investigation.

he used Individual A's address to obtain a California driver's license and a bank account. Individual A stated s/he ended contact with SCHAEFER after learning this. Individual A again confirmed that SCHAEFER used Subject Phone 1 when communicating with Individual A.

24.     According to a review of USPS records, there were several inquiries on the delivery status of the Wilson Parcel in the USPS online tracking system from IP addresses, including IP addresses associated with the service provider T-Mobile, which tracked the status of the parcel on or about December 4, 2020, and on or about December 22, 2020. According to information received from T-Mobile, the IP addresses on both occasions were associated with Subject Phone 1.

25.     Law enforcement later obtained and reviewed video surveillance footage from the Palm Springs area USPS Post Office from which the Wilson Parcel was mailed on or about December 3, 2020. The video footage showed a male individual, similar in physical appearance to SCHAEFER (who is not similar in physical appearance to Individual A based on a review of Individual A's driver's license photo), enter the post office with a package consistent in size and appearance to the Wilson Parcel, and mail the parcel at approximately 12:04 p.m. Pacific Time, approximately the same time USPS records indicated the Wilson Parcel was mailed.[13] Toll records

---

[13] The individual, believed by law enforcement to be SCHAEFER based upon a comparison of the surveillance footage with SCHAEFER's Illinois Secretary of State identification photograph, was wearing dark-colored sunglasses and a facial mask while in the post office. The cameras from which video surveillance footage was recovered were located behind a layer of protective plastic installed at the retail counter of the post office, which affected the visibility of individuals in the retail lobby area.

for Subject Phone 1 show Subject Phone 1 was used for a voice call at approximately 11:48 a.m. and sent a text message at approximately 12:55 p.m. Pacific Time on December 3, 2020.

26.     According to a preliminary review of historical call detail records with cell site information later obtained for Subject Phone 1 pursuant to the March 11, 2021 order of Acting Chief Judge Virginia Kendall, Subject Phone 1 utilized cell phone towers in Palm Springs, California on or about December 3, 2020, the same day the Wilson Parcel was mailed.  More specifically, the cell site location utilized for the Subject Phone 1 voice call which occurred at approximately 11:48 a.m. was in close proximity to the post office location where the Wilson Parcel was mailed. A review of the cell site information for Subject Phone 1 for the time period from October 15, 2020 through March 8, 2021 showed the only day Subject Phone 1 utilized a cell site location in Palm Springs, California was the date on which the Wilson Parcel was mailed.

27.     On or about December 5, 2020, and December 14, 2020, additional IP addresses found to be associated to with a Verizon Wireless cellular phone account also tracked the status of the Wilson Parcel.[14] According to a review of historical call detail records for Subject Phone 1, the Verizon phone number and Subject Phone 1 exchanged approximately 80 contacts between on or about October 17, 2020, and on or about December 22, 2020.

---

[14] The listed subscriber for the Verizon Wireless account was not SCHAEFER, Individual A, or Individual B (referenced below).

**2. April 26, 2021 Shipment of Parcels Containing Approximately 476 Grams of Methamphetamine and 853 Grams of Methamphetamine**

28.　　On or about April 27, 2021, law enforcement identified and intercepted two additional USPS Priority Mail Express parcels which were mailed on or about April 26, 2021, from Los Angeles, California as part of the same USPS retail transaction and addressed to two different addresses in Chicago, Illinois: "Cyroluxe Unlimited Tanning, Attn: [Individual F], 1101 S. Canal St., Ste 103, Chicago, IL 60607" ("Canal Parcel") and "[Individual H], 425 W. Roscoe St., Apt 404, Chicago, IL 60657" ("Roscoe Parcel"). Both the Canal Parcel and Roscoe Parcel listed the same sender information and the handwriting for both of the parcel labels appeared to be the same. Additionally, the handwriting for the Canal Parcel and Roscoe Parcel labels appeared to be substantially similar to the handwriting utilized for both the Wilson Parcel and **Parcel 1** labels.

29.　　According to a preliminary review of the phone location information and cell site data for Subject Phone 1, on or about April 26, 2021, at times in close proximity to the mailing of the Canal Parcel and the Roscoe Parcel, Subject Phone 1 was located in, and utilized cell site towers in, the area of the post office located in Los Angeles, California from which both parcels were mailed.[15]

---

[15] Law enforcement attempted to retrieve surveillance video from the Los Angeles, California area post office from which the Canal Parcel and Roscoe Parcel were mailed. However, USPS surveillance video was determined to be unavailable for the time period during which the parcels were mailed.

30.     USPS records and bank records obtained from Financial Institution 1 show that a debit card linked to SCHAEFER's bank account at Financial Institution 1 was used to pay for the shipment of both the Canal Parcel and the Roscoe Parcel.

31.     On or about April 29, 2021, law enforcement obtained federal search warrants in the Northern District of Illinois for the Canal Parcel (21 M 248) and Roscoe Parcel (21 M 249), which were both subsequently searched on or about May 3, 2021.

32.     The Canal Parcel was found to contain an inner white and multi-colored binder type item which contained a large gold-colored Mylar bag inside. The large bag further contained two gold and clear-colored re-sealable bags which were taped together and which each further contained a vacuum-sealed clear plastic bag with a white crystalline-like substance inside.  According to a chemical analysis report prepared by the DEA North Central laboratory, the white crystalline-like substance found within the bags weighed approximately 476 grams and consisted of methamphetamine with a substance purity of approximately 98%.

33.     The Roscoe Parcel was also found to contain a similar inner white and multi-colored binder type item which also contained a similar large gold-colored Mylar bag inside. The large bag further contained four gold and clear-colored re-sealable bags which were taped together in two separate bundles contained two bags each, which each further contained a vacuum-sealed clear plastic bag with a white crystalline-like substance inside.  According to a chemical analysis report prepared by the DEA North Central laboratory, the white crystalline-like substance found

within the bags weighed approximately 853 grams and consisted of methamphetamine with a substance purity of approximately 98%.

34.     According to a review of historical call detail records and pen register information for Subject Phone 1, Subject Phone 1 exchanged approximately 951 phone contacts from between on or about February 21, 2021, and on or about June 12, 2021, with the phone number, subscribed to Individual G, that was listed on the label of the Roscoe Parcel as contact information for the recipient of the Roscoe Parcel. Bank records provided by Financial Institution 1 show that on or about April 22, 2021, approximately four days before the Roscoe Parcel and the Canal Parcel were sent, an individual with the same first and last name as Individual G electronically transmitted $2,500 to SCHAEFER's account at Financial Institution 1.

35.     Additionally, on or about April 26, 2021, the day on which the Canal Parcel and Roscoe Parcel were mailed, approximately three phone contacts occurred between Subject Phone 1 and the listed recipient phone number on the Canal Parcel, which according to publicly available open source information is associated with the business listed on the Canal Parcel.

**C.     Additional Evidence of SCHAEFER's Use of Subject Phone 1**

36.     On or about March 25, 2021, law enforcement initiated surveillance in Chicago, IL based on the court-authorized order for interception of physical location information for Subject Phone 1. At approximately 1:44 p.m., law enforcement observed SCHAEFER exit a hotel located at 105 North May Street and enter a vehicle as a passenger, which then proceeded to travel to a different hotel located at 160 East

Huron Street at approximately 1:58 p.m. SCHAEFER entered the hotel and later exited on foot at approximately 2:23 p.m., at which point law enforcement further observed SCHAEFER walk to and enter a store located at 53 West Hubbard Street. At approximately 3:34 p.m., SCHAEFER was observed exiting the store and continued out of sight until surveillance was terminated.

37.     While conducting physical surveillance of SCHAEFER, law enforcement observed the physical ping locations for Subject Phone 1, as well as cell site locations utilized for the phone's activity, to be consistent with the location of SCHAEFER and his observed direction of travel over the course of the day.

38.     Additionally, as law enforcement conducted surveillance on SCHAEFER, I placed a phone call to Subject Phone 1. The phone call rang several times unanswered and proceeded to the voicemail, during which the voicemail message for Subject Phone 1 was found to contain a message with the voice of a male individual identifying the voicemail as associated to "Max Schaefer."

**D.     Attempted Execution of Search Warrant on June 22, 2021**

39.     On or about June 17, 2021, law enforcement obtained federal search warrants in the Northern District of Illinois to search Subject Phone 1 (21 M 376) and to search SCHAEFER and any bags on his person for Subject Phone 1, United States currency, and items associated with controlled substances (21 M 375).  On or about June 22, 2021, at approximately 10:30 a.m., law enforcement approached SCHAEFER in the lobby of a motel located in Elk Grove Village, Illinois, for the purpose of executing the search warrants. After law enforcement identified

themselves and informed SCHAEFER they had a warrant to search Subject Phone 1, SCHAEFER manually broke apart a mobile phone that was on his person and attempted to flee from law enforcement. Law enforcement apprehended SCHAEFER in the motel parking lot and placed him under arrest.

## CONCLUSION

40.    Based on the foregoing facts, I respectfully submit there is probable cause to believe that on or about November 30, 2020, MAX SCHAEFER, did knowingly and intentionally distribute a controlled substance, namely 50 grams or more of methamphetamine (actual), a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841.

FURTHER AFFIANT SAYETH NOT.

Kevin Hegi
Postal Inspector
U.S. Postal Inspection Service

Subscribed and sworn
before me this 22nd day of June 2021

Honorable Jeffrey Cummings
United States Magistrate Judge